ANDREW L. PACKARD (Bar No. 168690)
MICHAEL P. LYNES (Bar No. 230462)
Law Offices of Andrew L. Packard
319 Pleasant Street
Petaluma, CA 94952
Telephone: (707) 763-7227
Facsimile: (415) 763-9227
E-mail: Andrew@packardlawoffices.com

Layne Friedrich (State Bar No. 195431)
Michael J. Chappell (State Bar No. 238138)
LAWYERS FOR CLEAN WATER, INC.
1004 A O'Reilly Avenue
San Francisco, California 94129
Telephone: (415) 440-6520
Facsimile: (415) 440-4155
Email: Layne@lawyersforcleanwater.com

Counsel for Plaintiff
RUSSIAN RIVERKEEPER

Ruben Castellon (State Bar No. 154610)
STANZLER FUNDERBURK & CASTELLON LLP
180 Montgomery Street, Suite 1700
San Francisco, CA 94104-4205
Telephone: (415) 677-1450
Facsimile: (415) 677-1476
Email: rcastellon@sfcfirm.com

Counsel for Defendants
PACIFIC STATES INDUSTRIES, INC. and
NORTH CLOVERDALE BLVD., LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUSSIAN RIVERKEEPER, | |
| Plaintiff, | Case No. 3:07-cv-05393-JCS |
| vs. | PARTIES' JOINT STATUS STATEMENT |
| PACIFIC STATES INDUSTRIES, INC., NORTH CLOVERDALE BLVD., LLC; | |
| Defendants. | Conference Date: February 25, 2008<br>Time: 4:00 p.m.<br>Courtroom: Courtroom A, 15th Floor<br>Before: Hon. Marilyn Hall Patel |

This Joint Status Report is submitted on behalf of Plaintiff Russian Riverkeeper ("Riverkeeper" or "Plaintiff") and Defendants Pacific States Industries, Inc. and North Cloverdale Blvd., LLC (collectively "Defendants") in accordance with the Court's Orders Setting Status Conference dated October 22 and December 12, 2007, and the Standing Order for All Judges of the Northern District of California, dated March 1, 2007.

**1.    Jurisdiction and Service**

Riverkeeper's Complaint alleges that jurisdiction and venue are based on section 505 of the federal Clean Water Act, 33 U.S.C. § 1365 and 28 U.S.C. § 1331 and that Riverkeeper has standing to bring this action. Currently, Riverkeeper does not intend to serve additional parties.

**2.    Facts**

The case is a citizen suit enforcement action filed under section 505 of the Federal Water Pollution Control Act, also referred to as "the Clean Water Act", 33 U.S.C. § 1365. The Complaint alleges that Defendants have violated and continue to violate the terms of the National Pollutant Discharge Elimination System ("NPDES") Permit[1] regulating storm water pollution discharged from the Defendants' facility located in Cloverdale, California to Oat Valley Creek which is a tributary of the Russian River, both of which Plaintiff allege to be waters of the United States.

Defendant Pacific States Industries, Inc. is a family-owned business with approximately 300 employees. The company operates a sawmill and manufactures Redwood dimension lumber and other softwood lumber products throughout California and the Western United States. Defendant North Cloverdale Blvd., LLC

---

[1] The NPDES Permit that Riverkeeper alleges Defendant is violating is entitled "State Water Resources Control Board Water Quality Order No. 97-03-DWQ, National Pollutant Discharge Elimination System General Permit No. CAS000001, Waste Discharge Requirements for Discharges of Storm Water Associated with Industrial Activities Excluding Construction Activities."

is the property owner of a portion of the land and leases that land to Pacific States Industries, Inc. Defendants maintain that Plaintiff's allegations lack merit and are not supported by the evidence.

The Complaint more specifically alleges that Defendants' facility discharges storm water containing pollutants into waters of the United States without applying certain requisite pollution control technologies, and that such storm water exceeds certain water quality standards and benchmark levels established by the United States Environmental Protection Agency ("EPA") and the California State Water Resources Control Board. Plaintiff also alleges that Defendants have failed and continue to fail to perform certain requirements of its NPDES Permit, including conducting requisite monitoring. Based upon these allegations, Plaintiff seeks civil penalties, attorney fees and injunctive relief.

**3.    Legal Issues**

**Plaintiff's Statement of the Legal Issues:**

The Clean Water Act is a strict liability statute. Riverkeeper believes that several facts may not be disputed in good faith, including: (1) that Defendants and their facility are subject to the requirements of the General Permit; (2) that Defendants' facility has discharged and will continue to discharge pollutants in storm water in excess of EPA Multi-Sector Benchmark Values and the California Toxics Rule; (3) that Defendants' facility discharges storm water and non-storm water to Oat Valley Creek, which is tributary to the Russian River, and that both bodies of water are "waters of the United States" within the meaning of the Act; and (4) that Defendants have failed to conduct all storm water discharge monitoring required under the General Permit.

The primary legal issues in this matter are: (1) whether Defendants have developed and implemented an adequate Storm Water Prevention Pollution Plan (SWPPP); (2) whether Defendants have implemented an adequate M&RP; (3) whether Defendants have implemented adequate Best Management Practices

(BMPs) to achieve the Best Available Technology Economically Achievable ("BAT") for toxic pollutants and Best Conventional Pollutant Control Technology ("BCT") for conventional pollutants standards set forth in the General Permit; (4) the number of violations of the Permit and the Act; (5) appropriate injunctive relief; and (6) an assessment of civil penalties for Defendants' violations.

**Defendants' Statement of the Legal Issues:**

The issue in this case is whether Defendants satisfied the General Permit that it was issued that authorizes storm water and non-storm water discharges from its facility. In order for this Court to make such a determination, it must apply legal authority in interpreting the information collected and gathered by Defendants as part of its compliance with the General Permit. This information is reflected in a SWPPP which must be implemented and maintained at the site. The SWPP has two major objectives: (1) to help identify the sources of pollution that affect the quality of industrial storm water discharges and authorized non-storm water discharges, and (2) to describe and ensure implementation of BMPs to reduce or prevent pollutants in industrial storm water discharges and authorized non-storm water discharges. In addition, Defendants are to have a monitoring program that consists of (1) visual observations of storm water discharges and authorized storm water discharges and (2) collecting and analyzing samples of storm water discharges to ensure compliance with the General Permit.

**4.    Motions.**

There are no prior or pending motions in this matter. Riverkeeper anticipates filing a motion for summary judgment. Defendants anticipate filing partial motions for summary adjudication.

**5.    Amendments of the Pleadings.**

Riverkeeper filed its first amended complaint on October 31, 2007. Riverkeeper does not anticipate amending the complaint again at this time.

**6.    Evidence Preservation.**

Riverkeeper has already prepared its initial disclosures in this matter and has ensured that none of the relevant documents in its possession will be discarded or destroyed.

Defendants have organized its initial disclosures and will provide them to plaintiff on February 18, 2008. Defendants will not discard or destroy any relevant documents.

**7.    Disclosures.**

The parties exchanged initial disclosures by email on or before January 25, 2008, and have agreed to exchange all documents in electronic format on February 18, 2008 per F.R.C.P. Rule 26(a).

Riverkeeper's initial disclosures will include the documents upon which it based the allegations of the complaint, including the applicable NPDES permit, the Basin Plan, Defendants' Annual Reports, Defendants' Notice of Intent to Comply with the terms of the General Permit, and Riverkeeper's Notice of Intent to Sue, served on Defendants on or about August 16, 2007.

Defendant Pacific States Industries, Inc.'s initial disclosures will include the SWPPP, annual reports, rain history, maps, Waste Discharge Requirement (WDR) 89-76.

**8.    Discovery.**

Plaintiff propounded discovery on January 9 and 12, 2008.

**Scope of Anticipated Discovery**

**Plaintiff's Discovery**

Plaintiff will propound additional written discovery, and notices of site inspections, and anticipates taking depositions in March. Riverkeeper is requesting four site inspections of Defendants' facility to take place over the 2007-2008 and 2008-2009 Wet Seasons (from October 1st through May 31st), at least three of which will be requested to occur during rain events. Once the parties' initial disclosures are completed, Riverkeeper intends to serve Defendants with requests

for production of documents, requests for admissions and written interrogatories. Riverkeeper anticipates conducting discovery on several topics, including:

i.    Potential sources for pollution of storm water at the Defendants' Facility.

ii.    Defendants' procedures and actions for achieving compliance with the Clean Water Act at the Facility;

iii.    Information regarding physical structures at the Facility, including storm water drains, structural storm water containment mechanisms, etc.;

iv.    Information relating to Defendants' interactions with the California North Coast Regional Water Quality Control Board; and

v.    Defendants' financial information for the assessment of civil penalties.

Riverkeeper would intend to depose employees, managers and other agents of Defendants who may have relevant information. Although Riverkeeper has attempted to provide a thorough overview of the issues upon which it intends to focus its discovery efforts, the above list may be expanded as Riverkeeper investigation unfolds.

**Defendant's Discovery**

Defendants object to Plaintiff's attempt to oversee operations at it facility and will not agree to four site inspections. Defendants have agreed to one inspection subject to a number of conditions set forth in its objections to the inspection demands. Defendants further note that whether it complies with the General Permit is to be determined from the content detailed in its SWPPP and recorded from its Monitoring Program. Thus, site inspections are not relevant and only serve to inflate legal fees and disrupt operations at the facility. Defendants maintain that all formal discovery shall be governed by the Code. Defendants will use the discovery methods provided for in the Code as necessary to ascertain whether plaintiffs have gathered any additional evidence (lawfully or otherwise) that does not derive from

the SWPPP and monitoring program.  Defendants anticipate conducting discovery on several topics that may be relevant to its affirmative defenses.

**Plaintiff's Proposed Discovery Plan:**

      May 21, 2009 – Complete all non-expert discovery;

      July 17, 2009 –  Complete expert disclosures;

      August 14, 2009 – Complete rebuttals to expert;

      November 25, 2009 – Complete all expert discovery;

**Defendants' Proposed Discovery Plan:**

      September 8, 2008--Complete initial and limited discovery;

      Following hearing on Motions for Summary Judgment, additional discovery on relevant topics to take place

      February 9, 2009--Disclose experts

      March 16, 2009--Disclose Supplemental Experts

      June 22, 2009--Complete expert depositions

The Defendants' Scheduling Proposal explains basis for limiting discovery.

**9.**     **Class Actions.**  This is not a class action.

**10.**    **Related Cases.**  There are no cases related to this matter.

**11.**    **Relief.**  Plaintiff requests the Court grant the following relief:

      (a)     Declare Defendants to have violated and to be in violation of the Act;

      (b)     Enjoin Defendants from discharging polluted storm water from the facility unless authorized by the General Permit;

      (c)     Enjoin Defendants from further violating the substantive and procedural requirements of the General Permit;

      (d)     Order Defendants to immediately implement storm water pollution control and treatment technologies and measures that meet the BAT/BCT standards set forth in the General Permit, and to prevent pollutants in the facility's storm water from contributing to violations of any applicable water quality standards;

      (e)     Order Defendants to provide Plaintiff with reports documenting the

quality and quantity of their discharges to waters of the United States and their efforts to comply with the Act and the Court's orders;

(f)     Order Defendants to pay civil penalties of $27,500 per day per violation for all violations occurring before March 15, 2004 and $32,500 per day per violation for all violations occurring after March 15, 2004, for each violation of the Act pursuant to Sections 309(d) and 505(a) of the Act, 33 U.S.C. §§ 1319(d), 1365(a) and 40 C.F.R. §§ 191. – 19.4.

(g)     Order Defendants to take appropriate actions to restore the quality of the navigable waters impaired or adversely affected by their activities;

(h)     Award Plaintiff's costs (including reasonable investigative, attorney, witness, and consultant fees) as authorized by the Act, 33 U.S.C. § 1365(d); and

(i)     Award any such other and further relief as this Court may deem appropriate.

Defendants allege that injunctive relief and penalties are not necessary since it is in compliance with the General Permit.  Nevertheless, if technical violations are found to have taken place they would not require penalties up to the maximum amount permitted under the applicable statutes based on a variety of factors including but not limited to the nature and severity of the violation, size of the business, and oversight by the North Coast Regional Water Quality Control Board.

**12.     Settlement and ADR.**

**Prospects for Settlement.**  Plaintiff and Defendants have attempted to pursue a settlement, with Plaintiff's proposal for resolution transmitted to Defendants on January 18, 2008 and Defendants' response transmitted to Plaintiff on February 4, 2008.  The Parties continue to face substantial barriers to reaching agreement on the basic facts concerning the Facility.  Therefore, in the event that settlement discussions reach an impasse, it may prove helpful to assign a Magistrate to further assist the discussions.

**ADR Efforts.**  The parties met and conferred pursuant to ADR Local Rule

3.5 to discuss ADR options on January 8, 2008. The parties have filed their ADR certifications and a Stipulation & Proposed Order Selecting ADR Process (Mediation). The Court ordered mediation within 90 days of February 6, 2008.

**13.    Consent to Magistrate Judge for all Purposes.**

Plaintiff consented, Defendants declined, and on December 11, 2007 the matter was reassigned to the Honorable Marilyn Hall Patel for all further proceedings. Both parties consent to a magistrate judge for settlement purposes and to address any future discovery disputes.

**14.    Other References.**

Riverkeeper does not believe this case is suitable for reference to binding arbitration, a special master, or the Judicial Panel.

**15.    Narrowing of Issues.**

Plaintiff proposes that the following issues be narrowed by agreement or motion:

> (1) That Pacific States Industries, Inc. are owners/operators of the facility located at 31401 McCray Road in Cloverdale, California, 95425,. Parcel No. APN 115-150-45

> (2) North Clovedale , LLC is the owner of the property known as Parcel No. APN 115-150-26-0. North Cloverdale, LLC leases APN 115-150-26-0 to Pacific States Industries, Inc.

> (3) That Defendants' facility is subject to the terms of the General Industrial Storm Water Permit.

> (4) That Defendants' facility discharges storm water from at least two discharge points at its facility to Oat Valley Creek.

> (5) That Oat Valley Creek is a water of the United States under the Act, and that it discharges to the Russian River, which is also a water of the United States.

> (6)    That Defendants conduct industrial activities, including lumber

stripping, cutting, planning, milling and storage operations, outdoors and exposed to rainfall at the facility.

(7) That on at least thirty occasions since August 16, 2002, storm water discharged from Defendants facility contained pollutants in excess of the EPA Benchmark Values.

(8) That Defendants did not monitor storm water discharged from the facility for zinc and Carbon Oxygen Demand, as required by the General Permit, since August 16, 2002.

(9) That Riverkeeper issued a valid 60-day notice letter to Defendants on or about August 16, 2007.

Defendants note that plaintiff has already propounded discovery covering the above issues. Defendants further note that Plaintiff raises issues that are not legally relevant since, for example, exceeding EPA Benchmark Values, is not a violation of the Clean Water Act. Finally, defendants disagree with any attempt to separate legal questions as stated above for briefing when it will only take longer and cost more money to separate minor issues when the legal issue in this case is: whether Defendants satisfied the General Permit that it was issued that authorizes storm water and non-storm water discharges from its facility. If yes the General Permit was satisfied, the case is over. If no, then the question is whether there are remaining questions of fact that must be addressed in discovery including expert discovery or whether it is appropriate to go to the penalty phase if plaintiff is successful in its motion.

## 16.    Expedited Schedule.

Riverkeeper does not believe expedited procedures are required. Defendants believe that an expedited schedule is possible since very little discovery, if any, is necessary to determine whether or not the General Permit has been violated. As such, motions for summary judgment could be filed by the end of the year.

## 17.    Scheduling.

**Plaintiff's Proposal**

Plaintiff's proposes the following schedule for the designation of experts, discovery cut-off, hearing of dispositive motions, pretrial conference and trial:

January 15, 2010 – Deadline for parties to file motions for summary judgment;

April 9, 2010 - Last day to meet/confer to prepare joint final Pretrial Conference Statement;

April 23, 2010 - File joint final Pretrial Conference Statement/Order;

May 3, 2010 - Lodging of Exhibits and Other Trial Material;

May 10, 2010 - Deadline for filing/service of briefs on all significant disputed issues of law;

May 20, 2010 - File/serve statements designating excerpts from Depositions, Interrogatory Answers, and Responses to Requests for Admission to be offered at Trial other than for impeachment or rebuttal;

May 27, 2010 - Date by which parties objecting to receipt into evidence of any proposed testimony or exhibit must advise and confer with opposing party with respect to resolving such objection;

June 10, 2010 - Final Pretrial Conference; and

September 10, 2010 – Trial.

**Defendants' Proposal**

Defendants propose a three stage process. First, a deadline by which motions for summary of judgments are to be filed with limited discovery taking place beforehand. Second, if the Court determines that there are remaining factual issues then discovery on those issues will take place over the next six months. This will include any expert discovery that may be necessary. This stage will end with a trial on those remaining issues. Third, if necessary, is the penalty and injunctive relief phase.

Defendant proposes that motions for summary judgment be filed on or before October 1, 2008 subject to limited discovery. Thereafter, this Court can determine

whether further discovery to address any factual questions or disputed facts are necessary. In the event there are remaining factual issues following the Court's ruling regarding the motions, Defendants' proposes the following schedule for the designation of experts, discovery cut-off, , pretrial conference and trial:

July 27, 2009 - Last day to meet/confer to prepare joint final Pretrial Conference Statement;

August, 2009 - File joint final Pretrial Conference Statement/Order;

September 8, 2009 - Lodging of Exhibits and Other Trial Material;

September 14, 2009 - Deadline for filing/service of briefs on all significant disputed issues of law;

September 14, 2009 - File/serve statements designating excerpts from Depositions, Interrogatory Answers, and Responses to Requests for Admission to be offered at Trial other than for impeachment or rebuttal;

September 21, 2009 - Date by which parties objecting to receipt into evidence of any proposed testimony or exhibit must advise and confer with opposing party with respect to resolving such objection;

October 5, 2009 - Final Pretrial Conference; and

November 9, 2009 – Trial on the remaining factual issues identified by the Court.

     If a Penalty Phase is necessary, the Court can set the date following the November 9, 2009 trial.

**18.    Trial.**

     Riverkeeper has not requested a jury trial and believes trial will take 3-5 days. Defendants anticipate a short trial between 2 to 3 days if the motions for summary judgment are not successful. If necessary, a penalty phase trial would last no more than 1 day. Defendants agree to a bench trial since it maintains there is no statutory right to a jury.

**19.    Disclosure of Non-party Interested Entities or Persons.**

     Riverkeeper has filed its "Certification of Interested Entities or Persons"

required by Civil Local Rules 3-16.  Riverkeeper is not aware of any non-party interested entities or persons.

Defendants have filed its "Certification of Interested Entities or Persons" required by Civil Local Rules 3-16.

**20.    Other matters.**  The parties have a pending dispute concerning the issuance of Plaintiff's initial discovery requests.

Respectfully submitted,


Dated: February 15, 2008    LAW OFFICES OF ANDREW L. PACKARD
                            LAWYERS FOR CLEAN WATER


By: _____
    Andrew L. Packard
    Michael P. Lynes
    Attorneys for Plaintiff
    RUSSIAN RIVERKEEPER


Dated: February 15, 2008    STANZLER FUNDERBURK & CASTELLON LLP


By:    __/s/ Ruben S. Castellon_____
       Ruben S. Castellon
       Attorneys for Defendants
       PACIFIC STATES INDUSTRIES, INC. AND
       NORTH CLOVERDALE BLVD, LLC
       [electronic signature w/ auth. of counsel]

PARTIES' JOINT STATUS REPORT                          Case No. 3:07-cv-05393-JCS