**Exhibit A**

Andrew L. Packard (State Bar No. 168690)
Michael P. Lynes (State Bar No. 230462)
LAW OFFICES OF ANDREW L. PACKARD
319 Pleasant Street
Petaluma, California 94952
Telephone: (707) 763-7227
Facsimile: (707) 763-9227
Email: Andrew@packardlawoffices.com

Layne Friedrich (State Bar No. 195431)
LAWYERS FOR CLEAN WATER, INC.
1004 A O'Reilly Avenue
San Francisco, California 94129
Telephone: (415) 440-6520
Facsimile: (415) 440-4155
Email: Layne@lawyersforcleanwater.com

Counsel for Plaintiff
RUSSIAN RIVERKEEPER

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUSSIAN RIVERKEEPER, a non-profit public benefit corporation organized under the laws of the State of California,<br><br>        Plaintiff,<br><br>            v.<br><br>PACIFIC STATES INDUSTRIES, INC.,<br>NORTH CLOVERDALE BLVD., LLC<br><br>        Defendants. | Case No. 3:07-cv-05393-MHP<br><br><br>**[PROPOSED]**<br>**CONSENT DECREE** |

1

## CONSENT DECREE

2      The following Consent Decree is entered into between Plaintiff Russian Riverkeeper

3  ("Riverkeeper" or "Plaintiff"), and Defendants Redwood Empire Sawmill, Pacific States Industries,

4  Inc., and North Cloverdale Blvd., LLC (collectively "Defendants"), with respect to the following facts,

5  objectives, and commitments:

6      WHEREAS, Riverkeeper is a non-profit public benefit corporation whose mission is to

7  preserve, protect, and enhance the water quality, native fisheries, and wildlife of the Russian River and

8  its tributaries;

9      WHEREAS, Redwood Empire Sawmill is a division of Pacific States Industries, Inc. ("Pacific

10  States"), which operates the sawmill located at 31401 McCray Road in Cloverdale, California (the

11  "Sawmill" or "Facility"). The Facility's mailing address is listed as Post Office Box 156, Cloverdale,

12  CA 95425;

13      WHEREAS, North Cloverdale Blvd., LLC, holds title to APN 115-150-045 on which a portion

14  of the Sawmill is located.

15      WHEREAS, the California Regional Water Quality Control Board North Coast Region

16  ("Water Board") issued waste discharge requirements on May 24, 1989 for the Sawmill located at

17  31401 McCray Road in Cloverdale in Order No. 89-76.

18      WHEREAS, on March 8, 2007, the Water Board issued a letter to the Sawmill containing "the

19  inspection results, noncompliance notice and request for correction action" related to stormwater at the

20  Facility.

21      WHEREAS, on August 16, 2007, Plaintiff provided written notice to Defendants and the

22  required regulatory agencies of Plaintiff's intention to file suit ("Notice Letter") for violations of the

23  Federal Water Pollution Control Act ("Clean Water Act" or "CWA"), and the State of California's

24  General Permit to Discharge Storm Water Associated with Industrial Activity;[1]

25      WHEREAS, on September 11, 2007 the Water Board inspected the Sawmill.

26

27

28  [1] National Pollutant Discharge Elimination System ("NPDES") Permit No. CAS000001, State Water Resources Control Board Order No. 92-12-DWQ as amended by Order No. 97-03-DWQ (hereinafter the "Industrial Permit" or "Permit").

WHEREAS on October 9, 2007, the Sawmill responded to the Water Board inspection related issues and the letter of March 8, 2007.

WHEREAS, on October 22, 2007, Riverkeeper filed a complaint in the United States District Court, Northern District of California (Civil Case No. C-07-5393 MHP) alleging Defendants' violations of the Clean Water Act and the Industrial Permit;

WHEREAS, on October 31, 2007, Riverkeeper filed a first amended complaint ("FAC") in the United States District Court, Northern District of California, alleging Defendants' violations of the Clean Water Act and the Industrial Permit. The Notice Letter and FAC will hereinafter collectively be referred to as the "Litigation;"

WHEREAS, on December 11, 2007 this case was assigned to the Honorable Judge Patel;

WHEREAS, Riverkeeper and Defendants (collectively the "Settling Parties") without admitting any liability or wrongdoing, agree that it is in their mutual interest to enter into a Consent Decree setting forth the terms and conditions to resolve the allegations in Riverkeeper's complaint;

NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:

1. The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the Clean Water Act, 33 U.S.C. § 1365(a)(1)(A);

2. Venue is appropriate in the Northern District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. §1365(c)(1), because the Sawmill at which the alleged violations took place is located within this District;

3. The Complaint states a claim upon which relief may be granted against Defendants pursuant to Section 505 of the CWA, 33 U.S.C. § 1365;

4. Riverkeeper has standing to bring this action.

## I. OBJECTIVES

5. It is the express purpose of the Settling Parties entering into this Consent Decree to further the objectives set forth in the Clean Water Act and Industrial Permit and to resolve those issues alleged by Riverkeeper in this Litigation. In light of these objectives and as set forth fully below, Defendants agree to comply with the provisions of this Consent Decree. The Settling Parties enter this Consent

1    Decree for the purpose of avoiding prolonged and costly litigation. Nothing in this Consent Decree

2    shall be construed as, and Pacific States Industries, Inc. and North Cloverdale Blvd.. LLC. expressly

3    do not intend to imply, any admission as to any fact, finding, issue of law, or violation of law, nor shall

4    compliance with this Consent Decree constitute or be construed as an admission by Defendants of any

5    fact, finding, conclusion, issue of law, or violation of law. However, this paragraph shall not diminish

6    or otherwise affect the obligation, responsibilities, and duties of the Parties under this Consent Decree.

7    **II.  SETTLEMENT TERMS**

8           **A.  Compliance Measures**

9          6.  Discharge Points. Within 60-days of the Effective Date of this Consent Decree,

10   Defendants shall berm the areas directly adjacent to Oat Valley Creek and along McCray Road with

11   the exception of the part of the driveway behind Structure J on the Facility map as Best Management

12   Practices ("BMPs") with the intent to reduce the number of actual or potential storm water Discharge

13   Points ("DPs") at the Sawmill to DP #1 and DP #2. The DPs are identified on the Facility Map

14   attached hereto as Exhibit A. A partial infiltration pit will be placed at the driveway behind Structure J

15   as a BMP. In the event that storm water flowing from this infiltration pit discharges from the Facility,

16   this DP, as with all Facility DPs, will be identified in the Storm Water Pollution Prevention Plan

17   ("SWPPP") and Monitoring and Reporting Program ("M&RP"), sampled and monitored.

18   Additionally, the sampling location for DP #2 will be changed to reflect facility outflow and not runoff

19   from McCray Road. Regardless of whether Defendants, after further investigation, as required by the

20   Water Board, continue to believe in good faith that "RO-NW Outlet" identified on Exhibit A hereto

21   does not discharge storm water associated with industrial activity from the Facility, within the meaning

22   of the Industrial Permit and the CWA, Defendants shall still install a trench no more than one foot in

23   depth and width along the perimeter of Storage Yard A to protect any against any future potential

24   discharges from the Facility.

25         7.  Compliance with Best Available Technology and Best Conventional Pollutant Control

26   Technology. Within 60 days of the Effective Date, Defendants agree to reduce or prevent pollutants

27   associated with industrial activity in storm water discharges and authorized non-storm water discharges

28   through implementation of BMPs that constitute the Best Available Technology for toxic and non-

1   conventional pollutants and the Best Conventional Pollutant Control Technology for conventional

2   pollutants as defined in the Industrial Permit. Best Available Technology and Best Conventional

3   Pollutant Control Technology are defined in the Industrial Permit and are commonly referred to as

4   BAT/BCT. Within 60 days of the Effective Date, Defendants shall, if they have not already done so,

5   further develop and implement a SWPPP that complies with all requirements of the Industrial Permit

6   and that includes all BMPs that achieve BAT/BCT. Within 60 days of the Effective Date, Defendants

7   shall also revise their SWPPP as described herein to include any new BMPs such as the berms

8   described herein. Defendants shall evaluate the effectiveness of their BMPs by comparing analytical

9   results of storm water samples with the "Benchmark Levels" identified in Table 1 attached hereto as

10  Exhibit B and incorporated herein by reference. Defendants agree to comply with the action plan

11  requirements of paragraph 16 if (1) the average of five (5) storm water samples collected exceed any of

12  the Benchmark Levels or, (2) less than five (5) storm water samples are collected and any of the storm

13  water results exceed the Benchmark Levels.

14      8.  BMPs Designed to Make Progress Towards Meeting Applicable Water Quality Standards.

15  Receiving Water Limitation C(2) in the Industrial Permit requires that the Sawmill "not cause or

16  contribute to the exceedance of an applicable water quality limit." Defendants are required and agree

17  to make significant progress towards meeting applicable water quality standards ("WQS") as required

18  by the Water Board, Industrial Permit and the Water Quality Control Plan ("Basin Plan").

19      9.  Non-Storm Water Discharges.  Within 60 days of the Effective Date, Defendants shall

20  develop and implement BMPs at the Sawmill to eliminate all non-storm water discharges. The BMPs

21  shall be incorporated into the Sawmill's SWPPP as set forth below in paragraph 12.

22      10. BMP Maintenance.  Defendants shall inspect all BMPs at the Sawmill prior to each

23  reasonably anticipated rain event occurring during business hours, daily during periods of continuing

24  rainfall, within 24 hours after rainfall ceases, and monthly during the dry season (defined as June 1 –

25  September 30), to ensure proper implementation and effectiveness of BMPs. Any BMP that is

26  temporarily altered shall be restored immediately upon cessation of the operation or by the close of

27  business, except that where rain has been predicted within 24 hours, the restoration shall occur prior to

28

the rain event forecast for that day.  Defendants shall generate a report for each inspection detailing the conditions observed during the inspection ("Inspection Report") to be maintained at the facility.

**B.    Employee Training**

11. Within 60-days of the Effective Date, Defendants shall provide employee training for employees at the Sawmill as follows:

a.    <u>Non-Storm Water Discharge Training.</u>  Defendants shall conduct training on the Industrial Permit's prohibition of non-storm water discharges so that employees know what non-storm water discharges are and how to avoid them.  Such training shall be specified in the SWPPP.

b.    <u>BMP Training</u>.  Defendants shall provide training to all employees responsible for BMP implementation and maintenance.  Training shall be provided by a private consultant or representative of Defendants familiar with the Industrial Permit requirements and shall be repeated as necessary to ensure that all such employees are familiar with the Industrial Permit and SWPPP requirements.  Defendants shall maintain training records to document compliance with this paragraph, and shall provide Riverkeeper with a copy of these records within 14 days of receipt of a written request.

c.    <u>Sampling Training</u>.  Defendants shall provide training to all individuals performing sampling pursuant to the Industrial Permit at the Sawmill.  All employees shall thereafter be trained prior to becoming responsible for conducting sampling activities.  The training shall be provided by a private consultant or representative of Defendants familiar with the Industrial Permit requirements and shall be repeated as necessary to ensure Industrial Permit compliance.  Defendants shall maintain training records to document compliance with this paragraph, and shall provide Riverkeeper with a copy of these records within 14 days of receipt of a written request.

d.    <u>Visual Observation Training.</u>  Defendants shall provide additional training to all individuals performing visual observations pursuant to the Industrial Permit at the Sawmill.  The training will be provided by a private consultant or representative of Defendants and shall be repeated as necessary to ensure Industrial Permit compliance.  All new staff will receive this training before assuming responsibilities for implementing a SWPPP.  Defendants shall maintain training records to document compliance with this paragraph, and shall provide Riverkeeper with a copy of these records within 14 days of a written request.

C.     **Storm Water Pollution Prevention Plan**

12. SWPPP Revisions.  Within 60-days of the Effective Date, Defendants agree to revise the SWPPP currently in effect at the Sawmill to incorporate all storm water pollution prevention measures and other requirements set forth in this Consent Decree and/or the Industrial Permit.  Specifically, the SWPPP shall include a description of all industrial activities and corresponding potential pollution sources and, for each potential pollutant source, a description of the potential pollutants from the sources.  The SWPPP shall also identify BMPs, and their implementation dates as required by the Industrial Permit and the CWA.  Defendants shall revise the SWPPP to incorporate additional BMPs developed pursuant to this Consent Decree, the Industrial Permit, or as required by the Water Board.

13. Riverkeeper's review of revised SWPPP.  Defendants shall submit one copy of the revised SWPPP to Riverkeeper within 10 days of completion of the revision.

a.     Within 30 days of Riverkeeper's receipt of the revised SWPPP, Riverkeeper shall provide Defendants with comments and suggestions, if any, concerning the revisions to the SWPPP.

b.     Within 30 days of Defendants' receipt of Riverkeeper's comments on the revised SWPPP, Defendants will either incorporate Riverkeeper's comments and reissue the SWPPP or they shall provide a written explanation identifying the comment not incorporated and the reasons therefore.

c.     Either party may elect to invoke the dispute resolution procedures as outlined in paragraphs 23-27 below if a good faith attempt to resolve any dispute is unsuccessful.

D.     **Sampling, Monitoring, Inspecting, & Reporting**

14. Sampling Program.  Within 60-days of the Effective Date, Defendants shall develop and implement a M&RP for the collection of storm water samples during storm events that incorporates the requirements of this Consent Decree and the Industrial Permit for the Sawmill.

15. Sample Analysis and Sample Frequency.  Beginning with the 2008/2009 wet season (wet season is defined as October 1 – May 31) and continuing each wet season for the life of this Consent Decree, Defendants shall collect storm water samples from each discharge location at the Sawmill of each storm event up to five (5) storm events per wet season occurring during business hours. Defendants shall analyze the samples for the constituents currently identified in Table 1and the SWPPP.  Defendants may discontinue analyzing storm water samples for a constituent specified in the

SWPPP and identified in Table 1 after five consecutive sampling results for the constituent are reported as below both the "Benchmark Levels" and any applicable "WQS." A California state certified laboratory shall perform all sample chemical analyses. Defendants shall select laboratories and analytical limits such that, at a minimum, the method detection limits ("MDLs") shall be below both the "Benchmark Levels" and any applicable "WQS". The Benchmark Levels are set forth in Table 1.

16. Action Plans. In the event that Defendants exceed a Table 1 "Benchmark Levels" or applicable "WQS" during the life of this Consent Decree at the Sawmill, Defendants shall meet and confer with Plaintiff as set forth below to devise a mutually agreed upon action plan designed to prevent future exceedances ("Action Plan"). If applicable, the Action Plan is to be done by July 1 following each rainy season following the Effective Date. The Settling Parties agree to comply with the dispute resolution procedures set forth in paragraphs 23-27 below if there are any disagreements regarding the Action Plan(s).

a.     Benchmark Levels Action Plan. Defendants shall provide Riverkeeper with an Action Plan by July 1 following each rainy season. The Action Plan shall include when applicable (1) the identification of the pollutant(s) discharged in excess of the Benchmark Levels, (2) an assessment of the source of the pollutant, (3), the identification of additional BMPs that will be implemented to achieve compliance with the Benchmark Levels set forth in Table 1, and (4) time schedules for implementation of the proposed BMPs. Defendants agree to implement all non-structural and structural BMPs contemplated in the Action Plan as soon as practicable but no later than before the rainy season beginning on October 1. Riverkeeper shall have 30 days upon receipt of Defendants' Action Plan to provide Defendants with any such comments. Defendants shall have 14 days from the date Riverkeeper comments on Defendants' Action Plan to commence implementing any additional non-structural or structural BMPs. If any structural BMPs require any agency approval then Defendants shall contact Riverkeeper to request an extension of the deadline to implement the structural BMPs requiring agency approval.. Riverkeeper's consent to Defendants' requested extension shall not be unreasonable withheld. In addition, the BMP(s) shall be subject to any applicable agency requirements and approval. Defendants shall notify Riverkeeper in writing when the Action Plan has been implemented.

b.      WQS Action Plan. Defendants shall provide Riverkeeper with an Action Plan by July 1 following each rainy season to implement additional BMPs designed to make significant progress towards achieving the "WQS" as required pursuant to the Water Board, the Industrial Permit, and/or Basin Plan. If applicable, the Action Plan shall include (1) the identification of the pollutant(s) discharged in excess of the WQS, (2) an assessment of the source of the pollutant (3) the identification of additional BMPs that will be implemented to make significant progress towards achieving the applicable WQS; and (4) time schedules for implementation of the proposed structural and non-structural BMPs. Defendants agree to implement all non-structural and structural BMPs contemplated in the Action Plan as soon as practicable but no later than before the rainy season beginning on October 1. Riverkeeper shall have 30 days upon receipt of Defendants' Action Plan to provide Defendants with any such comments. Defendants shall have 14 days from the date Riverkeeper comments on Defendants' Action Plan to commence implementing any additional non-structural or structural BMPs. If any structural BMPs require any agency approval then Defendants shall contact Riverkeeper to request an extension of the deadline to implement the structural BMPs requiring agency approval. Riverkeeper's consent to Defendants' requested extension shall not be unreasonable withheld. In addition, the BMP(s) shall be subject to any applicable agency requirements and approval. Defendants shall notify Riverkeeper in writing when the Action Plan has been implemented.

17.      Site Visit. Riverkeeper's water quality engineer, which is currently Dr. Horner, may conduct one wet weather site visit at the Sawmill ("Site Visit") annually. The Site Visit shall occur during normal business hours and Riverkeeper shall provide Defendants with at least 48-hours notice prior to the Site Visit. Riverkeeper agrees that it shall not take any photographs, videotape or other recording devices at such an inspection. In addition, Riverkeeper agrees that no samples will be taken from the Sawmill property at such visit. During the Site Inspection, Dr. Horner shall be allowed access to the Sawmill's SWPPP and monitoring records and to all monitoring reports and data for the Sawmill.

18.      Reporting. During the life of this Consent Decree, Defendants shall concurrently copy Riverkeeper on all correspondences, plans, Annual Reports, monitoring data, or any document sent to the Regional Board or any regulatory or government agency or relating to any environmental conditions at the Sawmill. Defendants agree to provide Riverkeeper with copies of correspondences or

any documents received from a regulatory or government agency or regarding environmental conditions at the Sawmill within 10 days of the Defendants receipt of such information. Additionally, Defendants shall provide Riverkeeper with a copy of all laboratory analyses of sampling at the Sawmill within 10 days of Defendants' receipt of such information.

### E.    Environmental Projects, Litigation Fees, and Compliance Monitoring

19.    Mitigation. As mitigation for the violations alleged in the Complaint, Defendants shall pay $35,000 directly to the Rose Foundation for Communities and the Environment for use in making grants to eliminate or mitigate the impacts of storm water pollution to California watersheds receiving discharges from the Sawmill. The Rose Foundation's Tax I.D. Number shall be provided to Defendants. Defendants shall remit this payment to Tim Little at The Rose Foundation 6008 College Avenue, Suite 10, Oakland, California 94618 within 30 days of the Effective Date of this Consent Decree. Defendants shall provide Riverkeeper with a copy of such payment.

20.    Fees and Costs. Defendants shall reimburse Plaintiff in the amount of $103,000 to defray Plaintiff's reasonable investigative, expert, consultant and attorneys' fees and costs. Such payment shall be made to the "Lawyers for Clean Water Attorney Client Trust Account" in three installments and delivered by certified mail or overnight delivery to 1004 O'Reilly Avenue, San Francisco, CA 94129. The first such installment shall be in the amount of $15,000 and due within 30 days of the Effective Date. The second such installment shall be in the amount of $50,000 and due within 60 days of the Effective Date. The third such installment shall be in the amount of $38,000 and due within 90 days of the Effective Date.

21.    Compliance Monitoring and Oversight. Defendants agree to help defray Riverkeeper's reasonable costs incurred in conducting Site Visits and compliance monitoring by remitting to Riverkeeper $12,000 within 90 days of the Effective Date of this Consent Decree. Such remitted funds shall be made payable to "Lawyers for Clean Water Attorney Client Trust Account" and delivered by certified mail or overnight delivery to Lawyers for Clean Water, 1004 O'Reilly Avenue, San Francisco, California 94129, attention Layne Friedrich.

### H.    Force Majeure

22.    Defendants shall reasonably notify Riverkeeper pursuant to the terms of this paragraph,

where implementation of the steps set forth in this Consent Decree, within the time schedules set forth in those paragraphs, becomes impossible due circumstances beyond the control of Defendants or its agents, and which could not have been reasonably foreseen and prevented by the exercise of due diligence by Defendants (a "Force Majeure"). A Force Majeure is an event such as any act of God, war, fire, earthquake, flood, and restraint by court order or public authority. Any delays due to unanticipated or increased costs or expenses associated with the completion of any work or activity under this Consent Decree, changed financial circumstances, or Defendants' failure to make timely and bona fide applications and to exercise diligent efforts to obtain permits, or normal weather events shall not, in any event, be considered to be circumstances beyond Defendants' control.

      a.    If Defendants claim impossibility, they shall notify Riverkeeper in writing within 10 days of the date that Defendants first knew of the event or circumstance or should have known of the event or circumstance by the exercise of due diligence and shall describe the reason for the non-performance. Defendants' notice shall specifically refer to this Section of this Consent Decree and describe the anticipated length of time the delay may persist, the cause or causes of the delay, the measures taken or to be taken by Defendants to prevent or minimize the delay, the schedule by which the measures will be implemented, and the anticipated date of compliance. Defendants shall adopt all reasonable measures to avoid and minimize such delays.

      b.    The Settling Parties shall meet and confer in good-faith as soon as it is practicable, but within 14 working days of the notice provided in paragraph 22(a) above, concerning the non-performance and, where the Settling Parties concur that the non-performance was or is impossible, despite the timely good faith efforts of Defendants, due to circumstances beyond the control of Defendants that could not have been reasonably foreseen and prevented by the exercise of due diligence by Defendants, new performance deadlines shall be established.

      c.    If Riverkeeper disagrees with Defendants' notice, or in the event that the Settling Parties cannot timely agree on the terms of such a stipulation, either party shall have the right to invoke the Dispute Resolution procedures described in Section I below. In such proceeding, Defendants shall bear the burden of proving that any delay of any requirement of this Consent Decree was caused or will be caused by Force Majeure and the extent of any delay attributable to such circumstances.

## I.    Dispute Resolution

23.    Meet and Confer.  If a dispute under this Consent Decree arises, or either party believes that a breach of this Consent Decree has occurred, the Settling Parties shall meet and confer within ten (10) days of receiving written notification of a request for such meeting. The Settling Parties may, upon mutual written agreement, extend the time to conduct the meet and confer discussions beyond 10 days.  During the meet and confer proceeding, the Settling Parties shall discuss the dispute and make best efforts to devise a mutually satisfactory plan, including implementation dates, to resolve the dispute.

24.    If either Settling Party fails to meet and confer or the meet and confer does not resolve the dispute, after at least 10 days have passed after the meet and confer occurred or should have occurred, either party shall be entitled to initiate the formal dispute resolution procedures as outlined in the paragraphs below.  The Party initiating the formal dispute resolution procedure shall bear the burden of proof in establishing that the Consent Agreement has been violated.

25.    Formal Dispute Resolution.  If the meet and confer does not fully resolve the Settling Parties' disputes, the Settling Parties agree that their exclusive recourse is to file a Motion to Show Cause ("Motion") in United States District Court for the Northern District of California, before Judge Patel, to determine whether either party is in breach of this Consent Decree and, if so, to require the breaching party to remedy any breach identified by the District Court within a reasonable time frame. The party filing any such Motion may request expedited review of the Motion, and the non-filing party shall join in any such request.

26.    If Judge Patel is not available to perform the role identified herein, the Parties agree that the Motion shall be re-assigned pursuant to applicable rules of the Northern District Court.

27.    The prevailing or substantially prevailing party in the Formal Dispute Resolution proceeding shall receive its reasonable costs and attorney's fees incurred in the dispute resolution process in accord with the standard established by § 505 of the Clean Water Act, 33 U.S.C. § 1365(d).

## I.    Mutual Release Of Liability

28.    Except for violations of this Consent Decree, which shall be addressed in accordance with this Consent Decree, in consideration of the above, upon the Effective Date of this Consent Decree, the Settling Parties hereby fully release each other and their respective successors, assigns,

officers, agents, employees, partners, shareholders, and all persons, firms and corporations including subsidiaries, parent and affiliate companies having an interest in them, from any and all alleged violations of the Clean Water Act and the Industrial Permit claimed in Riverkeeper's FAC against the Defendants up to and including the Effective Date of this Consent Decree.

29.     Nothing in this Consent Decree limits or otherwise affects Riverkeeper's right to address or take any position that it deems necessary or appropriate in any formal or informal proceeding before the Regional Board, Environmental Protection Agency ("EPA"), or any other judicial or administrative body on any other matter relating to the Defendants.

**J.**     **Notices**

30.     All notices, requests, demands and other communications which may be given under or concerning this Consent Decree shall be in writing and shall be sent via overnight mail or email. In each case, the notice shall be sent to the following:

If to Riverkeeper, addressed to:

Executive Director
Russian Riverkeeper
Post Office Box 13350
Healdsburg, CA 95448
Email: rrkeeper@sonic.net

with copies to:

Andrew L. Packard
Law Offices Of Andrew L. Packard
319 Pleasant Street
Petaluma, California 94952
Email: Andrew@packardlawoffices.com

If to Defendants, addressed to:

Roger Burch
Pacific States Industries, Inc.
Post Office Box 156
Cloverdale, CA 95425

with copies to:

Ruben Castellon
Stanzler, Funderburk & Castellon LLP
3189 Danville Boulevard, Suite 250G
Alamo, CA 94507

Email: rcastellon@sfcfirm.com

or to such other place as any party may designate as to itself by written notice to the other party.

31.    Any notice, report, certification, data presentation or other document submitted by Defendants under or pursuant to this Consent Decree, which discusses, describes, demonstrates, or supports any finding or makes any representation with any requirement(s) of this Consent Decree shall comply with the Industrial Permit, State and Federal law.

### K.    Miscellaneous Provisions

32.    Continuing Jurisdiction.  The Court shall retain jurisdiction to enforce the terms and conditions of this Consent Decree and to resolve disputes arising hereunder as may be necessary or appropriate for the construction or execution of the Consent Decree up to and including the Termination Date.

33.    Construction.  The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Clean Water Act or the Industrial Permit, or as specifically herein.

34.    Choice Of Law.  The laws of the United States shall govern this Consent Decree.

35.    Severability.  In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a Court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

36.    Counterparts.  This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

37.    Modification of the Consent Decree.  This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Settling Parties.

38.    Full Settlement.  This Consent Decree constitutes a full and final settlement of this matter.

39.    Integration Clause.  This is an integrated Consent Decree.  This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Settling Parties

and expressly supersedes any and all prior oral or written agreements covenants, representations and warranties (express or implied) concerning the subject matter of this Consent Decree.

40.    Authority.  The undersigned representatives for Riverkeeper and the Defendants each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this Consent Decree.

41.    Effective Date.  The effective date of the Consent Decree shall be the date on which this Consent Decree is entered by the Court and following the 45-day review and comment period ("Effective Date").

42.    Term of Consent Decree.  This Consent Decree shall continue in effect for a period of five years from the Effective Date.

43.    Agency Review.  Pursuant to the Clean Water Act, Riverkeeper shall submit this executed Consent Decree to the EPA and the United States Department of Justice for the 45-day review and comment period.

44.    Court Approval.  If for any reason the Court should decline to approve this Consent Decree in the form presented, the Settling Parties shall work cooperatively to modify the Consent Decree within 30-days so that it is acceptable to the Court.

45.    Timing.  All obligations under this Consent Decree shall begin upon the Effective Date of this Consent Decree unless otherwise stated in this Consent Decree.


The Settling Parties hereby enter into this Consent Decree.


Dated: ___6/18/08___, 2008

_____
Don McEnhill, Executive Director
Russian Riverkeeper


Dated: _____, 2008

_____
Austin Vanderhoof
Pacific States Industries, Inc.


Dated: _____, 2008

_____
Roger Burch

1   and expressly supersedes any and all prior oral or written agreements covenants, representations and

2   warranties (express or implied) concerning the subject matter of this Consent Decree.

3       40.    Authority.  The undersigned representatives for Riverkeeper and the Defendants each

4   certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and

5   conditions of this Consent Decree.

6       41.    Effective Date.  The effective date of the Consent Decree shall be the date on which this

7   Consent Decree is entered by the Court and following the 45-day review and comment period

8   ("Effective Date").

9       42.    Term of Consent Decree.  This Consent Decree shall continue in effect for a period of

10  five years from the Effective Date.

11      43.    Agency Review.  Pursuant to the Clean Water Act, Riverkeeper shall submit this

12  executed Consent Decree to the EPA and the United States Department of Justice for the 45-day

13  review and comment period.

14      44.    Court Approval.  If for any reason the Court should decline to approve this Consent

15  Decree in the form presented, the Settling Parties shall work cooperatively to modify the Consent

16  Decree within 30-days so that it is acceptable to the Court.

17      45.    Timing.  All obligations under this Consent Decree shall begin upon the Effective Date

18  of this Consent Decree unless otherwise stated in this Consent Decree.

19

20      The Settling Parties hereby enter into this Consent Decree.

21  Dated: _____, 2008

22                                  _____
                                    Don McEnhill, Executive Director
                                    Russian Riverkeeper

23

24  Dated: JUNE 23 , 2008            _____
                                    Austin Vanderhoof
25                                  Pacific States Industries, Inc.

26  Dated: 6/22 , 2008               _____
27                                  Roger Burch
                                    North Cloverdale Blvd., LLC
28

1

North Cloverdale Blvd., LLC

2

approved as to form:

3

4

5  Dated: _____, 2008

Andrew L. Packard
Law Offices of Andrew L. Packard
Attorneys for Plaintiff
Russian Riverkeeper

6

7

8

9

10  Dated: _____, 2008

Ruben Castellon
Stanzler, Funderburk & Castellon LLP
Attorney for Defendants

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2  approved as to form:

3

4  Dated: _____, 2008                    _____

5                                                  Andrew L. Packard
                                                   Law Offices of Andrew L. Packard
6                                                  Attorneys for Plaintiff
                                                   Russian Riverkeeper
7

8

9

10  Dated: _____, 2008                   _____

11                                                 Ruben Castellon
                                                   Stanzler, Funderburk & Castellon LLP
                                                   Attorney for Defendants
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# [PROPOSED] ORDER

2
Based on the above Consent Decree,

3
IT IS HEREBY ORDERED that the above captioned action is dismissed with prejudice.

4
IT IS FURTHER ORDERED that the Court shall retain jurisdiction over Riverkeeper's claims

5
against Defendant for the sole purpose of enforcing compliance by the Settling Parties with the terms

6
of the Consent Decree;

7

8
IT IS SO ORDERED.

9
Dated: _____     NORTHERN DISTRICT OF CALIFORNIA

10

11

12
_____

     Honorable Marilyn Hall Patel
     United States District Court

13
     Northern District of California

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**EXHIBIT A – FACILITY MAP**

2



3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT B – TABLE 1

**Benchmarks Levels**

| | | |
|---|---|---|
| Zinc Total * | mg/L | 0.117 |
| Ammonia-Nitrogen | mg/L | 19 |
| Oil and Grease | mg/L | 15 |
| Total Suspended Solids | mg/L | 100 |
| Chemical Oxygen Demand | mg/L | 120 |
| Total Organic Carbon | mg/L | 110 |
| Biochemical Oxygen Demand | mg/L | 30 |
| pH | s.u. | 6.0 to 9.0 |
| Specific Conductance | uohms/cm | 700 |
| Hardness | | |

**\* Hardness dependent - assumes 100**